# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VICKI-LOU GRACE NOVAK, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No.  SA-16-CV-939-XR |
| CHICAGO TITLE OF TEXAS, LLC, | § § § | |
| *Defendant*, | § § § | |

# ORDER

On this date, the Court considered Defendant's Motion for Summary Judgment (Docket no. 34) and the corresponding response, reply, and supplements. After careful consideration, the Court GRANTS Defendant's Motion.

# BACKGROUND

On September 21, 2016, Plaintiff filed her Original Complaint with this Court. Docket no. 1. Plaintiff brings a claim for age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, 623, 626 ("ADEA"). *Id.*

Plaintiff, who was sixty-seven years old when she filed her complaint, was employed by Defendant Chicago Title of Texas, LLC for seventeen years. Docket no. 1 at 2. Before she was terminated by Defendant, Plaintiff held the position of escrow officer. *Id.* Plaintiff began her position when she was forty-six years old. Docket no. 34 at 2. Plaintiff's responsibilities "centered on closing real-estate transactions, including preparing federal forms to be approved by lenders prior to closing." *Id.* County Manager Todd Rasco was Plaintiff's supervisor from January 2012 to the time she was terminated. *Id.*

1

In Plaintiff's deposition, she answered that she had a good working relationship with Rasco and never made any complaints about Rasco while she was employed by Defendant. Docket no. 34-2 at 14–15. Plaintiff answered that Rasco never made age-related comments to her, and she did not file any age-discrimination complaints while employed by Defendant. *Id.* at 15, 37. Plaintiff answered that, prior to her termination, she did not think she had been treated differently from any other escrow officer due to her age. *Id.* at 16.

Also in her deposition, Plaintiff answered that, as an escrow officer, she was required to follow federal and state laws concerning real estate closings, including those promulgated by the United States Department of Housing and Urban Development ("HUD"). *Id.* at 9. Plaintiff had to prepare HUD settlement statements, and Plaintiff answered that it would be a violation of HUD rules or regulations for Plaintiff "to close a real estate transaction without first having the lender's approval of the HUD settlement statement." *Id.* at 10. Plaintiff received training on HUD settlement statements while she worked for Defendant, including about how to complete them and the requirements. *Id.* at 11. When asked if she knew that "following the rules with respect to HUD settlement statements was something that the company took very seriously," Plaintiff said yes. *Id.* at 12. When asked if she understood that her job "would be in jeopardy if [she] did not follow the rules and regulations and policies regarding completion of HUD settlement statements," Plaintiff said yes. *Id.* at 12–13. Plaintiff further responded that she was subject to the policies in Defendant's Code of Business Conduct and Ethics ("Code of Conduct"). *Id.* at 21.

Plaintiff alleges that during her employment, she performed the essential functions of her job and faithfully discharged her duties. Docket no. 1 at 2. Plaintiff alleges she was wrongfully terminated on May 6, 2013, due to her age and that Defendant discriminated against her "by

imposing unfair and discriminatory standards." *Id.* Plaintiff was sixty-three years old when she was terminated. Docket no. 34 at 1. Plaintiff states that prior to her termination, she received positive performance evaluations and "had realized regular increases in her salary." Docket no. 1 at 2. Plaintiff further alleges that Defendant's policies, selection criteria, and actions "have had a disparate and discriminatory impact on Plaintiff due to her age." *Id.* at 3. Plaintiff alleges that Defendant's acts constitute a willful and intentional violation of the ADEA. *Id.*

Defendant alleges that Plaintiff was terminated because she "engaged in a knowing, intentional, and *admitted* violation of company policy when she attempted to close a real-estate transaction without getting the lender's approval for the Settlement Statement required by the U.S. Department of Housing and Urban Development." Docket no. 34 at 1 (emphasis in original).

In her deposition, Plaintiff stated that she made a clerical correction on a closing statement and did not send the corrected statement to the lender. Docket no. 34-2 at 22. Plaintiff stated that she knew that she needed to send the corrected statement to the lender; however, she did not send it to the lender before the closing. *Id.* at 22–23. Plaintiff stated that the clerical error was that she "mis-pro-rated some homeowners' dues and [she] caught it and corrected it." *Id.* at 23. Plaintiff stated that she corrected the statement after the actual closing. *Id.* When asked if the lender should have been provided a copy of the settlement statement to approve it before Plaintiff actually went forward with the closing, Plaintiff responded yes. *Id.* at 25. In this case, however, Plaintiff stated that the closing went forward without the lender approving the statement that she corrected. *Id.*

Plaintiff was asked why, when she realized there was an error at the closing, she didn't stop and print a corrected statement for the lender to sign, and Plaintiff responded "I can't

answer that." *Id.* at 32. Despite her response, Plaintiff stated that this would have been the correct procedure. *Id.* Plaintiff stated that she knew that she was not following the correct procedure, and based on her thirty-something years of experience as an escrow officer, she knew she was doing something wrong. *Id.*

Plaintiff stated that she had a meeting with Rasco and Director of Residential Marketing Bill Lester on May 3, 2013. *Id.* at 32. The meeting was on the same date that Plaintiff contacted the lender that there was an error on the statement. *Id.* at 34. At the meeting, Plaintiff admitted to making the mistake on the statement, and Rasco told Plaintiff that he didn't want it to happen again. *Id.* at 33. Plaintiff also admitted that she did the closing despite having an incorrect statement. *Id.* Plaintiff stated that Rasco did not discuss her possible consequences at the meeting. *Id.* at 34.

On May 6, 2013, Plaintiff attended a meeting with Rasco and Human Resources Administrator Chris Hodges. *Id.* at 35. Plaintiff was terminated at this meeting. *Id.* Plaintiff stated that Rasco said "he had had given the situation some thought over the weekend and he thought it best we go our separate ways." *Id.* Plaintiff stated that she wasn't sure what the "situation" was to which Rasco was referring. *Id.* at 35–36. Plaintiff stated that, at this meeting, Rasco said nothing about Plaintiff's age, and there was no discussion about retirement. *Id.* at 37. Plaintiff stated that Hodges also said nothing age-related at the meeting. *Id.*

On November 10, 2017, Defendant filed its Motion for Summary Judgment now pending before the Court. Docket no. 34. The Court now considers Defendant's motion, Plaintiff's response (Docket no. 36), and Defendant's reply (Docket no. 37).

4

## DISCUSSION

**I.  Standard of Review**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## II. Application

Under the ADEA, it is unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prove a disparate treatment claim pursuant to the ADEA, "[a] plaintiff must prove by a preponderance of the evidence . . . that age was the 'but for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177–78 (2009); *see also Cervantez v. KMGP Servs., Co. Inc.*, 349 F. App'x 4 (5th Cir. 2009).

When a plaintiff's ADEA claim is based on circumstantial evidence, as Plaintiff's is here, to establish a *prima facie* case of age discrimination, a plaintiff must demonstrate: (1) she belongs to the protected group of persons over the age of forty; (2) was qualified for her position; (3) was discharged; and (4) was replaced with someone younger or outside the protected group. *Cervantez v. KMGP Servs. Co. Inc.*, 349 F. App'x 4, 8 (5th Cir. 2009). If a plaintiff establishes a *prima facie* case, the burden then shifts to the employer to provide evidence that the employee was discharged "for a legitimate, nondiscriminatory reason." *Cervantez v. KMGP Servs. Co. Inc.*, 349 F. App'x 4, 8 (5th Cir. 2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). If the employer meets its burden, the plaintiff must prove by a preponderance of evidence that the legitimate reasons offered by the employer were not its true reasons, but actually a pretext for discrimination. *Id.* at 9.

Defendant moves for summary judgment on the grounds that Plaintiff cannot show that she was replaced with someone younger or outside the protected group. Docket no. 34 at 7. Defendant does not dispute that Plaintiff is over the age of forty, was qualified for her position, and was discharged. Plaintiff argues that, following her termination, her accounts were given to a

younger colleague named Greg Crane. Docket no. 36 at 8. Crane was forty-seven years old at the time of Plaintiff's termination, and although he is inside the protected age class under the ADEA, he was younger than Plaintiff when she was terminated. *Id.* at 7. Defendant further argues that Crane was already an escrow officer employed by Defendant when Plaintiff was terminated, took over only some and not all of Plaintiff's files, and was not the only employee of Defendant to take over Plaintiff's files. Docket no. 34 at 7. Thus, Defendant argues, Crane did not replace Plaintiff for purposes of the ADEA. *Id.* Even if true, and although the Fifth Circuit recognizes that "applicable case law holds that when an employee's position has been eliminated and the job duties reassigned to existing employees, that employee has not been replaced," *Kean v. Jack Henry & Assocs., Inc.*, No. 3:12-CV-1159-B, 2013 WL 2983504, at *5 (N.D. Tex. June 17, 2013), *aff'd*, 577 F. App'x 342 (5th Cir. 2014), Plaintiff argues that Defendant replaced her with Crane and another younger escrow officer who was hired in July or August 2013. Docket no. 36 at 11; Docket no. 36-2 at 17. The Court, therefore, finds there is a genuine dispute of material fact as to whether Plaintiff was replaced with someone younger or outside the protected group.

Defendant argues that Plaintiff was discharged for a legitimate, nondiscriminatory reason. Defendant contends that Plaintiff was discharged for her knowing, intentional, and admitted misconduct of going through with the closing on the settlement statement that included errors. Docket no. 34 at 9. Plaintiff admitted that she made an error on the closing statement, knew she needed to send the corrected statement to the lender but did not before the closing, and admitted that this was wrong and not the correct procedure. Docket no. 34-2 at 22–25, 32. Plaintiff met with Rasco three days before she was terminated to discuss her error and the fact that she went through with the closing while using the incorrect statement. *Id.* at 34. Plaintiff met with Rasco again three days later in which Rasco told Plaintiff that "he had had given the situation some

7

thought over the weekend and he thought it best we go our separate ways," then terminated Plaintiff. *Id.* at 35. Rasco stated he terminated Plaintiff because "she admitted to [him] in a meeting on May 3, 2013, that she had intentionally and knowingly submitted an incorrect HUD Settlement Statement that had not been approved by the lender when performing a closing on May 2, 2013, in violation of industry rules and regulations and company policy." Docket no. 34-3 at 2. The Court finds that Defendant has provided evidence that Plaintiff was discharged for a legitimate, nondiscriminatory reason.

Next, the burden shifts to Plaintiff to show that the legitimate reason offered by Defendant was not its true reason for terminating her, but actually a pretext for discrimination. An employer's proffered reason for terminating an employment is legitimate if the employer reasonably believes that reason and acts on it in good faith. *See Cervantez*, 349 F. App'x at 10 (finding "a fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith"); *see also Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (finding "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason").

Plaintiff fails to present any evidence that Defendant's stated legitimate reason to terminate her was actually a pretext for discrimination. Plaintiff states that she had no disciplinary actions taken against her while she worked for Defendant prior to her using the settlement statement with mistakes and subsequent termination. Docket no. 36 at 1–3. But Plaintiff's work history does not show a pretext for discrimination based on age. Plaintiff states that her assistant Claudia Charles asked Plaintiff in 2011 when she intended to retire because Charles wanted to take over Plaintiff's position. *Id.* at 3. Plaintiff also states that in January 2013, four months prior to her termination, Human Resources Administrator Hodges asked her when

she intended to retire after she was on leave for knee replacement surgery. *Id.* But Plaintiff presents no evidence that her assistant or Hodges, neither of whom were her supervisor, had the authority to terminate her or played any role in her termination. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (holding that comments are evidence of discrimination only if related to the protected class, proximate in time to the adverse employment decision, made by someone with authority over the employment decision, and related to the employment decision at issue). Although Hodges was present at the meeting in which Rasco terminated Plaintiff, Plaintiff presents no evidence that Hodges had authority or made any decision related to Plaintiff's termination.

Plaintiff argues that at the May 6 meeting—three days after the meeting in which Rasco told Plaintiff to not make the settlement statement mistake again—Rasco discharged Plaintiff without warning, measured discipline action, or opportunity to correct her actions moving forward. Docket no. 36 at 15–16. Plaintiff, however, presents no evidence of pretext for discrimination based on age. In her deposition, when asked if "other than a couple questions about when would [Plaintiff] retire, there weren't any other age-related comments or remarks made to [Plaintiff] while [she was] employed at [Defendant]," Plaintiff responded, "That's correct." Docket no. 34-2 at 39. The only other "extenuating circumstances" that Plaintiff states led her to personally believe she was terminated due to age were that she was Defendant's oldest closer, had a good base clientele, had not been formally reprimanded, and was replaced by a younger and less experienced employee. *Id.* But Plaintiff's subjective belief does not rise to the level of showing pretext for discrimination. *E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) ("We have consistently held that an employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief."); *see also Ray v. Tandem*

*Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995) (finding that plaintiff who made several conclusory assertions that supervisors showed a preference to younger employees did not demonstrate pretext for discrimination).

Further, although Rasco instructed Plaintiff to be accurate, slow down, correct the mistake on the settlement statement, and not make the mistake again, Plaintiff presents no evidence that her termination being based on her statement error was a pretext for discrimination. Neither Plaintiff's employment history with Defendant, nor the fact that Defendant did not discipline Plaintiff further than the warnings in the May 3 meeting before Defendant terminated Plaintiff, rise to the level of showing pretext for discrimination. Plaintiff also argues that Rasco answered in his deposition that he was unsure of the timing as to when the settlement statement mistake was discovered and corrected, and that Defendant's handling of Plaintiff's mistake was "arbitrary, cavalier, and frankly, completely unbelievable." Docket no. 36 at 16. But these arguments fail to show evidence of pretext for discrimination. Although a factfinder may reach a different disciplinary or employment decision than Defendant did here, it is not that factfinder's job to "substitute [one's] judgment of an employee's qualifications for the employer's in the absence of proof that the employer's nondiscriminatory reasons are not genuine." *See La. Office of Cmty. Servs.*, 47 F.3d at 1448. Plaintiff presents no genuine dispute of fact that there is no pretext for discrimination related to Defendant's stated legitimate reason for terminating Plaintiff. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for wrongful termination based on age.

Plaintiff further argues she meets the elements of a *prima facie* claim of discrimination because she suffered disparate treatment. To bring a claim for disparate treatment under the ADEA, a plaintiff must show that: (1) she belongs to the protected group of persons over the age

of forty; (2) was qualified for her position; (3) was subject to adverse employment action; and (4) that others similarly situated were treated more favorably. *Crosby v. Computer Sci. Corp.*, 470 F. App'x 307, 308 (5th Cir. 2012) (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)). Defendant argues that Plaintiff fails to show that others similarly situated were treated more favorably. To meet this standard, a plaintiff must proffer a comparator who was treated more favorably "under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). "[E]mployment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.*

Plaintiff states that Defendant's employee Greg Crane enjoyed permissive treatment from Defendant. As Defendant argues, however, Plaintiff's termination following her admitted violation of Defendant's policies and Crane's reduction in salary due to a lack of work production are not similar enough to compare as nearly identical circumstances. Plaintiff also argues that "on at least ten other instances, other escrow officers had made mistakes which caused [Defendant] to lose money (which [Plaintiff's] mistake did not)," but these other officers were not terminated following these instances. Docket no. 36 at 11. But Plaintiff presents no evidence that these other employees who made some type of mistake have essentially comparable violation histories to Plaintiff's admitted violation of Defendant's policies regarding settlement statements. Plaintiff fails to present any genuine dispute of material fact that no others who were similarly situated were treated more favorably than she was. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for disparate treatment.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket no. 34) is GRANTED. Plaintiff's claims are hereby DISMISSED WITH PREJUDICE. The Clerk is directed to issue a Judgment in favor of the Defendant, and that Plaintiff takes nothing on her claims. Defendant may submit its Bill of Costs within fourteen days in the form directed by the Clerk should it desire to pursue these costs.

It is so ORDERED.

SIGNED this 18th day of December, 2017.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE